UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANDREA SIMMONS, | § § § | |
| Plaintiff, | § § | Case No.: |
| v. | § § | |
| EMERGENCY HOSPITAL SYSTEMS, LLC | § § § | TRIAL BY JURY DEMANDED |
| Defendant. | § § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Andrea Simmons, (hereinafter "Plaintiff"), complains of Emergency Hospital Systems, LLC (hereinafter "Defendant"), and for cause of action would show the Court as follows:

## INTRODUCTION

1. Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2. Plaintiff files this Complaint and complains about race discrimination, national original and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), as amended, and under 42 U.S.C. §1981.

3. This action seeks compensatory damages, plus lost wages (past, present, and future), punitive damages, attorney's fees, taxable court costs, pre-judgment and post-judgment interest.

## PARTIES

1

4. Plaintiff, Andrea Simmons, is a resident of Porter, Texas.

5. Defendant, Emergency Hospital Systems, LLC. can be served upon its registered agent, Shanti Bansal, M.D., whose registered office is located at 4511 Wentworth Avenue, Sugar Land, Texas 77479.

## VENUE

6. Venue is appropriate in the United States District Court for the Southern District of Texas, Houston Division, in that the Defendant can be said to reside and/or do business in this district as required under 28 U.S.C. § 1391(e). Alternatively, venue is appropriate because a substantial part of the events or omissions giving rise to the claim occurred here. *See* 28 U.S.C. § 1391(b)(2).

## JURISDICTION

7. This Court also has original jurisdiction of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) under Title VII, as amended, and under 42 U.S.C. §1981 for employment discrimination on the basis of race.

8. The unlawful employment practices were committed within the jurisdiction of this Court.

## PROCEDURAL REQUISITES

9. All conditions precedent to the filing of this action have been met by Plaintiff in that she has filed a timely complaint with the Equal Employment Opportunity Commission and has exhausted all other administrative remedies from said agency to pursue her claims.

## FACTS

Upon information and belief, Plaintiff alleges as follows:

10. Plaintiff identifies as a White American.

11. Defendant is the owner and operator of two hospitals and several free-standing Emergency

Rooms in Harris, Liberty and Montgomery counties.

12. Plaintiff was hired by Defendant on October 16, 2015, initially as a part-time registration clerk.

13. During the course of Plaintiff's employment with Defendant, she was repeatedly promoted, and served at times in a charge entry role, as the medical records coordinator and overseeing registration at the Cleveland Emergency Hospital and the Texas Emergency Hospital, also in Cleveland, Texas.

14. At the time of Plaintiff's termination, she served as the Health Information Management ("HIM") Coordinator.

15. In her role as HIM Coordinator, Plaintiff worked closely with the Revenue Cycle Director, who supervised the charge entry, medical billing, medical coding and collections process.

16. In July 2019, the prior Revenue Cycle Director was terminated and Suman Smith ("Smith") was hired to fill the position.

17. Smith is of Indian national origin.

18. Even though Smith was hired in July, 2019, she did not introduce herself to Plaintiff until approximately September 2019.

19. Also, in September 2019, Defendant's then CEO, Don Vickers, completed Plaintiff's performance evaluation and gave her high scores.

20. Shortly after meeting Plaintiff in person for the first time in September 2019, Smith began to harass Plaintiff and Cheyenne Polk ("Polk"), the Charge Entry Coordinator.

21. Smith would repeatedly telephone and text message both Plaintiff and Polk in the early hours of the morning accusing them of various practices that resulted in Defendant losing money. When Plaintiff and Polk asked for specific example to substantiate Smith's claims,

    Smith responded by doubling down on her demeaning and abusive language directed to Plaintiff and Polk.

22. Plaintiff reported Smith's conduct to Defendant's HR personnel as well as the executive team and was instructed to "lay low" because Smith was "having a hard time".

23. Specifically, Plaintiff met with Robin Mason ("Mason") the Human Resources Director on November 12, 2019 to discuss Smith's behavior. In this meeting, Plaintiff was instructed to "lay low".

24. On November 19, 2020, Plaintiff emailed Mason, and indicated that Smith continued to harass Plaintiff. Plaintiff requested to be removed from any interaction with Smith. Management failed take any substantive steps to assist Plaintiff or protect her from Smith's harassment.

25. Polk also filed a formal HR complaint against Smith and asked to be moved to a different position, away from Smith's supervision. Management failed to assist Polk or protect her from Smith's harassment, so Polk resigned.

26. Smith's harassment against Plaintiff continued to escalate.

27. Smith repeatedly emailed the owners of Defendant, the majority of whom are of Indian national origin, accusing Plaintiff of being incompetent, and engaging in illegal activity, such as altering medical records and not ensuring charges were correct.

28. Smith also emailed derogatory and untrue statements about Plaintiff to a substantial number of Defendant's employees who were in non-management roles.

29. On February 11, 2020, Plaintiff sent an email to members of Defendant's executive team,

30. including David Way, the current CEO of Defendant, Mason, Patti Foster, the COO of Texas Emergency Hospital and Michael Akins, the Corporate COO, again reporting

Smith's harassment and requesting to be removed from Smith's direct supervision.

31. David Way indicated that Smith's behavior would stop. Smith's harassment did not, in fact, stop.

32. Shortly afterwards, Plaintiff met with Mason and Patti Foster, who told Plaintiff that they could not help her with Smith's harassment.

33. During March 2020, Smith proceeded to terminate the majority of the billing/coding staff, all of whom were of non-Indian national origin.

34. In April 2020, Smith again escalated her verbal harassment of Plaintiff and repeatedly accused Plaintiff and Polk (who had previously resigned due to Smith's harassment) of purposely destroying Defendant and Smith also engaged in unwarranted professional and personal attacks.

35. After days of this harassment, Plaintiff again reached out to David Way, the CEO, for assistance.

36. David Way, despite his position as CEO and nominal superior to Smith, said he could not help Plaintiff because "Dr. Moparty likes her and they stick together."

37. Dr. Moparty is an owner of Defendant and also of Indian national origin.

38. Within a few weeks of this conversation, Plaintiff was removed from her position by Smith via email. Plaintiff was not terminated at this time and Smith directed Plaintiff to provide her "knowledge" to a new employee.

39. Plaintiff spoke with both David Way and Robin Mason about this personnel action, and both indicated that they were unaware of Smith's actions beforehand.

40. Plaintiff proceeded to follow Smith's instructions in the hope she would be transferred to a position outside of Smith's direct supervision.

41. However, Smith's harassing behavior via email and text message continued.

42. In early June 2020, Plaintiff called Mason to indicate she planned to resign and provide two weeks' notice due to Smith's ongoing harassment of Plaintiff. Mason requested that Plaintiff not resign.

43. Mason apparently communicated to David Way that Plaintiff was planning on resigning, and Way proceeded to call Plaintiff seventeen (17) times after working hours before Plaintiff talked to him. During the call, Way told Plaintiff not to resign. He told her that her job was safe, and that Plaintiff was to be moved to a different department outside of Smith's supervision the following morning.

44. This promised move never occurred and Plaintiff remained under Smith's supervisory control.

45. The following week, Plaintiff took a few vacation days. During Plaintiff's vacation, Smith continued to text message Plaintiff in a harassing manner, until Plaintiff finally blocked Smith's phone number.

46. Upon Plaintiff's return, she spoke with Robin Mason and Patti Foster about Smith's harassment, and Patti Foster indicated that the owners and Smith "all stick together" so neither Mason nor Smith could help her.

47. Plaintiff was terminated June 19, 2020 allegedly for poor performance, even though there was no evidence or documentation to support this alleged non-discriminatory reason for termination.

48. Plaintiff was terminated because she is White, of American national origin and in retaliation for her repeated complaints of harassment.

**COUNT I**

### DISCRIMINATION ON THE BASIS OF RACE UNDER TITLE VII

49. Plaintiff re-alleges and incorporates into count one, paragraphs 1-48.

50. Defendant, by and through their agents and employees, especially Suman Smith, intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by Title VII, as amended.

51. Defendant, by and through their agents, have maintained a policy of race discrimination in violation of the foregoing statute against Plaintiff.

52. If Plaintiff were not White, she would not have been subjected to disparate treatment, and removed from her position.

53. As a direct, legal and proximate result of this discrimination, Plaintiff has sustained economic injuries, resulting in damages in an amount to be proven at trial.

### COUNT II

### DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN

54. Plaintiff re-alleges and incorporates into count two, paragraphs 1-48.

55. Defendants, by and through their agents and employees, especially Suman Smith, intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by Title VII, as amended, and directly discriminated against Plaintiff and other employees of American origin because of their national origin, by harassing them due to their national origin and then by firing Plaintiff.

56. Defendants, by and through their agents, especially Suman Smith, have maintained a policy of national origin discrimination in violation of the foregoing statute against Plaintiff.

57. If Plaintiff were not of American origin, she would not have been harassed, treated poorly, and unlawfully discharged.

## COUNT III

### TERMINATION OF THE BASIS OF RETALIATION

58. Plaintiff re-alleges and incorporates into count three paragraphs 1-48.

59. Defendant, by and through its agents and employees, intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by Title VII, because of its retaliation for opposition to unlawful employment practices.

60. Defendant, acting by and through its employees, maintained a policy of retaliation, in violation of the foregoing statutes against Plaintiff.

61. If Plaintiff had not opposed an unlawful employment practice, she would not have been terminated.

## COUNT IV

### RACE DISCRIMINATION UNDER 42 U.S.C. §1981

62. Plaintiff re-alleges and incorporates into count four, paragraphs 1-48.

63. The statute located at 42 U.S.C. § 1981(a) provides that "[a] persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

64. "'Make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981.

65. Defendant, by and through their agents and employees, including but not limited to

Suman Smith, engaged in the aforementioned practices, policies, customs and usages made unlawful by 42 U.S.C. §1981.

66. Had Plaintiff been of a different race, she would not have been subjected to discrimination that caused Plaintiff to be terminated.

67. By the conduct described above, Defendant Emergency Hospital Systems, LLC, intentionally deprived Plaintiff of the same rights as are enjoyed by non-White individuals to the performance, enjoyment and all benefits and privileges, of her contractual relationship with Defendant, in violation of 42 U.S.C. §1981.

68. As a direct, legal and proximate result of this discrimination, Plaintiff has sustained economic injuries, resulting in damages in an amount to be proven at trial.

## DAMAGES

69. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages, including but not limited to emotional distress.

## PUNITIVE DAMAGES

70. Defendant's actions were intentional, willful, harsh, oppressive, and malicious. The wrongs done by the Defendant were aggravated by the kind of willfulness, wantonness and malice for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

## ATTORNEY'S FEES

71. Defendant's actions and conduct, as described herein, and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining the services of COANE and

ASSOCIATES, PLLC, in order to initiate this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## JURY DEMAND

72. Plaintiff hereby restates her request for a jury trial.

## INJUNCTIVE RELIEF

73. Plaintiff seeks injunctive relief requiring Defendant to take affirmative and effective steps to remove and otherwise discipline managers who have failed to comply with Title VII of the Civil Rights Act of 1964, as amended.

74. Plaintiff seeks injunctive relief requiring Defendant to take specific actions designed, implemented, and confirmed by qualified non-government consultants to ensure that all supervisory employees are adequately trained to identify, investigate, and stop situations and complaints. Such specific actions include, but are not limited to:

   a. allocation of significant funding and trained staff to implement all changes within two years;

   b. discipline managers who have violated the company's policies and failed to meet their legal responsibility to promptly investigate complaints and to take effective action to stop and deter prohibited personnel practices against employees;

   c. establishing and strictly measuring EEO compliance as a critical element in every manager's performance standards;

   d. creating a process for the prompt investigation of harassment and reprisal complaints separate from the agency's process;

   e. mandatory and effective training for all employees and managers on discrimination and retaliation issues, investigations, and appropriate corrective

      actions;

    f.  reinstating Plaintiff to her position.

## PRAYER

75. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this cause, Plaintiff has the following relief:

    a.  Back Pay;

    b.  Pre-Judgment Interest on Back Pay;

    c.  Front Pay;

    d.  Compensatory Damages, including, but not limited to, emotional distress;

    e.  Injunctive and Affirmative Relief;

    f.  Attorney's Fees and Costs;

    g.  Pain and suffering;

    h.  Reinstatement;

    i.  Post-Judgment Interest;

    j.  Such other and further relief, at law or in equity, general or special to which Plaintiff may show she is justly entitled.

Dated: December 18, 2020                    Respectfully submitted,

                                                               **COANE AND ASSOCIATES, PLLC**

                                                               By: */s/Bruce A. Coane*
                                                               Bruce A. Coane, Attorney-in-Charge
                                                               S.D. Tex. # 7205
                                                               TX Bar # 04423600
                                                               Email: bruce.coane@gmail.com
                                                               Matthew P. Swiger

                S.D. Tex. #2276929
                TX Bar # 24088495
                Email: matt.swiger@coane.com
                Coane and Associates, PLLC
                5177 Richmond Ave., Suite 770
                Houston, TX 77056
                Telephone: 713-850-0066
                Facsimile: 713-850-8528
                **ATTORNEYS FOR PLAINTIFF**